**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

FILED

Jun 18, 2008  NF.

JUN 1 8 2008

MICHAEL W. DOBBINS
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| CONSUMERS DIGEST COMMUNICATIONS, LLC, a Delaware limited liability company, ) ) ) | |
| ) | No. |
| Plaintiff, ) | **JURY DEMAND** |
| ) | |
| v. ) | 08CV3486 |
| ) | JUDGE SHADUR |
| WESTPOINT HOME, INC., a Delaware corporation, formerly doing business as WESTPOINT STEVENS INC., ) ) ) | MAGISTRATE JUDGE SCHENKIER |
| ) | |
| Defendant. ) | |

**COMPLAINT**

Plaintiff, Consumers Digest Communications, LLC ("CDC"), by its attorneys, as and for its Complaint against Defendant, WestPoint Home, Inc., formerly doing business as WestPoint Stevens Inc. ("WPH"), states as follows:

**Nature of the Action**

1.      This is an eight-count complaint to redress violations of federal trademark infringement, false advertising, and dilution under the Lanham Act, federal copyright infringement, and misappropriation and conversion, unfair competition, consumer fraud, and deceptive trade practices under Illinois common law.

2.      As described more fully below, after the expiration of a license agreement under which WPH lawfully licensed CDC's service marks and trademarks, WPH wrongfully, willfully, recklessly, and without CDC's express authorization or permission used CDC's marks and copyrighted materials in the advertising and marketing of its goods.

**Jurisdiction and Venue**

3.      Jurisdiction is based on 28 U.S.C. §1338(a), 28 U.S.C. §1338(b), 28 U.S.C. §1331, and principles of supplemental jurisdiction.

4.     Venue is proper in this district under 28 U.S.C. § 1391(b) because a substantial portion of the property that is the subject of this action (CDC's service marks, trademarks, and copyrighted materials, etc.) is situated in this district and infringement of CDC's marks and copyrighted materials occurred in this district.  In addition, pursuant to the license agreements set forth below, the parties agreed that venue shall lie in this district.

### The Parties

5.     CDC is a Delaware limited liability company with its principal place of business located in Deerfield, Illinois.

6.     WPH is a Delaware corporation with its principal place of business located in New York, New York.

7.     WPH is not in any manner affiliated or associated with CDC, and WPH has no authorization from CDC to use the service marks, trademarks, and copyrighted materials, except as previously permitted under a license agreement.

### Background Facts

8.     CDC is the owner of the following federally registered trade and service marks (collectively the "Marks"):

> (1) "CONSUMERS DIGEST" trademark (Reg. No. 1,642,060), word mark for Consumers Digest Magazine ("060 Mark");
>
> (2) "CONSUMERS DIGEST" service mark (Reg. No. 1,378,360), word mark for Consumers Digest Magazine ("360 Mark");
>
> (3) "CONSUMERS DIGEST BEST BUY" service mark (Reg. No. 2,443,011), word mark ("011 Mark"); and
>
> (4) "CONSUMERS DIGEST BEST BUY" service mark (Reg. No. 2,441,264), design mark for the Best Buy seal, with and without ribbon ("Best Buy Seal Design Mark").

(Copies of the print outs from the United States Patent and Trademark Office's website for these Marks are attached as Exhibit A.)

9.     CDC has been using the 060 and the 360 Marks for over forty-seven (47) years and

2

each mark has obtained incontestable status. CDC has been using the 011 Mark and the Best Buy Seal Design Mark continuously for almost twenty (20) years and each mark has obtained incontestable status.

10.     In each issue of Consumers Digest Magazine, CDC publishes feature-length articles and "special" sections evaluating and recommending products in certain product categories, along with several "in every issue" or "running departments" sections. Certain of those articles feature "CONSUMERS DIGEST BEST BUY" recommendations. The designation as a "CONSUMERS DIGEST BEST BUY" has acquired secondary meaning in the marketplace as a product sourced by CDC and deemed to be of exceptional value and a leader in its class. The Best Buy Seal Design Mark is also highly distinctive and functions to designate the rating by Consumers Digest Magazine that the product is of an exceptional value.

11.     No product category that Consumers Digest Magazine reviews is in every issue of the magazine. Indeed, different product categories are on a variety of review cycles: some are every year and others are every 5 years, with most being somewhere in between.

12.     WPH manufactures and distributes bedding and bath products, amongst other items.

13.     In the November/December 2004 issue of Consumers Digest Magazine, an article was published that reviewed bedding products and designated as being a "Consumers Digest Best Buy" WPH's Vellux Blanket.

14.     On March 1, 2005, WPH and CDC entered into a one-year license agreement permitting WPH to utilize the Marks in the marketing, advertising and promotion of the Vellux Blanket. (A copy of the March 1, 2005 License Agreement is attached as Exhibit B.)

15.     WPH renewed the license agreement for an additional year on March 1, 2006. (A copy of the March 1, 2006 License Agreement is attached as Exhibit C.) The March 1, 2006 License Agreement expired on March 1, 2007.

16.     Prior to the expiration of this license agreement, WPH was approached by CDC with an

3

option to renew the agreement for an additional year. WPH declined.

17.     Pursuant to Section 6.4 of the license agreement, WPH was required to, within seven
(7) days of the expiration of the license agreement, notify in writing all SELLERS (as the term is
defined in the license agreement) as follows:

A.      The license agreement between WPH and CDC has expired;

B.      To discontinue within seven (7) days of the notification all use of the BEST BUY
LICENSED MATERIALS (as the term is defined in the license agreement);

C.      To remove and dispose of within seven (7) days of the date of the notification all
promotional and advertising materials containing the SEAL or the BEST BUY
LICENSED MATERIALS (as the term is defined in the license agreement); and

D.      To remove within seven (7) days of the date of the notification all uses of the SEAL or
the BEST BUY LICENSED MATERIALS from their websites.

In addition, WPH was required to deliver to CDC a copy of the notice that was sent directing the
SELLERS to discontinue the use of the BEST BUY LICENSED MATERIALS and WPH agreed it
would not continue to promote or package the PRODUCT (as the term is defined in the license
agreement) in association with the BEST BUY LICENSED MATERIALS after the expiration of the
license agreement.

18.     Further, Section 6.4.1 of the license agreement states that "LICENSEE may continue to
use packaging containing the SEAL or the BEST BUY LICENSED MATERIALS produced three (3)
months or more **prior to the expiration of this agreement** for up to three (3) months after expiration
of this agreement." (Emphasis added).  Put another way, WPH had the right to sell off packaging
containing CDC's licensed Marks until June 1, 2007 as long as the inventory was produced on or
before December 1, 2006.  This provision does not give WPH the right to load up on package
inventory using CDC's Marks, especially during the last quarter of the license agreement (or after).

19.     CDC reviewed bedding products again in its January/February 2008 issue of Consumers
Digest Magazine. Once again, the Vellux Blanket was rated a Consumers Digest Best Buy. Following
this review, CDC approached WPH to inquire if it was interested in entering into a new license

4

agreement. WPH declined.

## WPH's Infringing Activities

20.    WPH's license agreement with CDC expired on March 1, 2007.

21.    Nevertheless, CDC has recently discovered that on WPH's website (www.westpointhome.com), behind the navigation heading "Articles and Tips" there was a link called "In the News" which opened a new page presenting a series of magazine reviews. The first review featured promotional copy referencing part the Consumers Digest article/rating of the Vellux Blanket as it appears in CDC's January/February 2008 issue. Immediately to the right of this copy block was a reproduction of the feature article opening page with a copy of CDC's magazine logo across the bottom. If one were to click on this image, it linked to a full screen image of the opening page to CDC's feature article on bedding under a reproduction of CDC's published and copyrighted editorial review of the Vellux Blanket (a sample copy of which is attached as Exhibit D). Clicking on the Vellux Blanket link provided took viewers to yet another web page featuring CDC's Best Buy Seal Design Mark and proudly proclaimed that the Vellux Blanket was "recently voted (inaccurate) a Consumer (typo) Digest Best Buy." (A sample copy of which is attached as Exhibit E).

22.    In addition, following the expiration of the license agreement, WPH intentionally and willfully built inventory of packaging using CDC's Marks with the intent to infringe on CDC's Marks and breach the terms of the license agreement. Further, WPH failed to notify its sellers in writing that the license agreement had expired and that they should dispose of all of WPH's promotional and advertising materials containing CDC's Marks.

23.    CDC is entitled to protect the good-will and reputation inherent in its Marks and copyrighted materials and is likewise entitled to exclusive enjoyment of the Marks and copyrighted materials. Unless WPH's unlawful uses are restrained by this Court, CDC will suffer substantial irreparable injury for which it has no adequate remedy at law.

## Count I

### Violation of Section 32 (1) of the Lanham Act

24.    CDC realleges the allegations contained in paragraphs 1 through 23 as its paragraph 24.

25.    As set forth above, without CDC's consent, WPH used CDC's Marks in connection with the sale, offering for sale, distribution and advertising of its goods. (See Exhibits D and E).

26.    WPH's actions were undertaken willfully and with the intent and knowledge that such actions would cause confusion, mistake or deception in the relevant market as to the Marks.

27.    Accordingly, WPH's use of CDC's Marks is in violation of Section 32(1) of the Lanham Act, 15 U.S.C. §1114(1).

28.    Unless restrained by this Court, WPH's use of the Marks will irreparably damage CDC, for which it has no adequate remedy at law.

29.    WPH's willful and intentional actions have unjustly enriched it and damaged CDC, thereby entitling CDC to monetary damages, punitive damages, attorney's fees and costs in an amount to be determined at trial.

## Count II

### Violation of Section 43(a) of The Lanham Act

30.    CDC realleges the allegations contained in paragraphs 1 through 29 as its paragraph 30.

31.    As set forth above, WPH's unauthorized use of CDC's Marks is likely to cause confusion, mistake or deceive as to the sponsorship, approval, or certification of WPH's goods by CDC.

32.    Such actions were undertaken willfully and with the intent to cause confusion, mistake or deception.

33.    WPH has in bad faith intended to profit from use of the Marks.

34.    As a result, WPH has violated Sections 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

35.    As a direct and proximate result of WPH's unlawful conduct, CDC has suffered harm and, unless they are enjoined by this Court, will continue to suffer substantial irreparable injury for which there is no adequate remedy at law.  CDC is therefore entitled to preliminary and, thereafter, permanent injunctive relief to remedy such unauthorized actions, in accordance with 15 U.S.C. 1116, in addition to damages, in accordance with 15 U.S.C. 1117.  CDC is further entitled to immediate delivery from WPH of CDC's Marks and all other related proprietary materials pursuant to 15 U.S.C. 1118.

36.    As a result of WPH's willful and intentional misconduct, CDC is entitled to monetary damages, punitive damages, attorney's fees and costs permitted by statute in an amount to be determined at trial.

### Count III

### Violation of Section 43(c) of The Lanham Act

37.    CDC realleges the allegations contained in paragraphs 1 through 36 as its paragraph 37.

38.    As stated above, CDC's Best Buy Seal Design Mark is a famous mark, in accordance with Sections 43(c) of the Lanham Act, 15 U.S.C. § 1125(c).

39.    WPH's unauthorized use began after the Best Buy Design Seal became famous and has caused dilution of the distinctive quality of the mark.

40.    By its actions, WPH willfully intended to trade on CDC's reputation and to cause dilution of the famous mark.

41.    As a result, WPH has violated Sections 43(c) of the Lanham Act, 15 U.S.C. §1125(c).

42.    As a direct and proximate result of WPH's unlawful conduct, CDC has suffered harm and, unless they are enjoined by this Court, will continue to suffer substantial irreparable injury to the goodwill associated with its Marks.

43.    Defendants' misconduct has enabled it to earn profits to which it was not in equity or good conscience entitled, and this misconduct unjustly enriched it at CDC's expense.

7

44.     As a direct and proximate result of WPH's willful and intentional misconduct, CDC is entitled to monetary damages, punitive damages, attorney's fees and costs permitted by statute in an amount to be determined at trial.

## Count IV

### Copyright Infringement Under 17 U.S.C. §§ 101 et seq.

45.     CDC realleges the allegations contained in paragraphs 1 through 44 as its paragraph 45.

46.     WPH knew that the January/February 2008 issue of the Consumers Digest Magazine containing editorial copy was CDC's exclusive copyrighted materials.

47.     CDC is the owner of the Consumers Digest Magazine and editorial copy contained therein, and has the exclusive right to copy, distribute and transmit them in the United States. CDC's magazine and editorial copy are original works, copyrightable under the Copyright Act.

48.     At all times herein, CDC has complied with the Copyright Act and has secured the exclusive rights and privileges in and to the copyrights in CDC's magazines.

49.     WPH has, without authorization from CDC, copied, distributed, disseminated and/or otherwise exploited unauthorized editorial content from CDC's January/February 2008 issue of Consumers Digest Magazine on WPH's website. CDC has not licensed WPH to reproduce or distribute any of CDC's copyrighted materials in any manner whatsoever.

50.     By posting unauthorized editorial content from the January/February 2008 issue of Consumers Digest Magazine on its website, WPH has actively engaged in, aided, encouraged materially, contributed to, and abetted the unauthorized copying, distribution, dissemination and/or exploitation of CDC's protected copyrighted materials.

51.     WPH knew its acts constituted copyright infringement.

52.     WPH's conduct was willful within the meaning of the Copyright Act.

53.     As a result of its wrongful conduct, WPH is liable to CDC for copyright infringement pursuant to the Copyright Act. CDC has suffered, and will continue to suffer, substantial losses,

including, but not limited to, damage to its business reputation and goodwill.

54.    CDC is entitled to recover damages, which include its losses and any and all profits WPH may have made as a result of its wrongful conduct.  Alternatively, CDC is entitled to statutory damages under the Copyright Act.

55.    In addition, because WPH's infringement was willful, CDC is also entitled to punitive damages and attorney's fees and costs in an amount to be determined at trial.

**Count V**

**Misappropriation and Conversion**

56.    CDC realleges the allegations contained in paragraphs 1 through 55 as its paragraph 56.

57.    WPH has, through its unauthorized use of CDC's Marks and copyrighted materials, misappropriated the Marks, copyrighted materials, and associated goodwill, and has unlawfully converted them to its own use.

58.    WPH's intentional and willful misconduct has enabled it to earn profits to which it was not entitled in equity or good conscience.

59.    CDC is therefore entitled to recover from WPH all profits earned as a result of its misappropriation and conversion in an amount to be determined at trial.

60.    Because such misappropriation and conversion was committed willfully and performed with intent to harm CDC, CDC is also entitled to punitive damages in an amount to be determined at trial.

**Count VI**

**Common Law Unfair Competition**

61.    CDC realleges the allegations contained in paragraphs 1 through 60 as its paragraph 61.

62.    In view of the first, continuous, prominent and exclusive use of its Marks Consumers has acquired, at common law, a protectable interest in them.

63.    By using CDC's Marks intentionally and willfully, and with full knowledge of CDC's

9

rights, WPH has infringed, and will continue to infringe, upon CDC's rights in its distinctive Marks.

64.    WPH's repeated and persistent acts constitute common law unfair competition.

65.    CDC has been and will continue to be irreparably harmed by WPH's conduct unless and until WPH's actions are temporarily, preliminarily, and thereafter permanently enjoined.

66.    CDC has no adequate remedy at law; therefore, it is entitled to the preliminary, and permanent injunctive relief it seeks, in addition to damages in an amount to be determined at trial.

## Count VII

### Illinois Consumer Fraud and Deceptive Business Practices Act

67.    CDC realleges the allegations contained in paragraphs 1 through 66 as its paragraph 67.

68.    WPH's actions as set forth above constitute unfair and deceptive practices in conduct of trade or commerce in violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. 505/1, et. seq.

69.    WPH committed these acts willfully and with the intent that consumers will rely on these unfair and deceptive trade practices.

70.    CDC has suffered actual damages as a result of these acts.

71.    CDC is entitled to an injunction enjoining WPH from the further commission of unfair and deceptive trade practices and is entitled to recover actual damages, damages for aggravation and inconvenience, punitive damages, and attorney's fees pursuant to 815 Ill. Comp. Stat. 501/10a(c).

## Count VIII

### Uniform Deceptive Trade Practices Act

72.    CDC realleges the allegations contained in paragraphs 1 through 71 as its paragraph 72.

73.    WPH's actions as set forth above constitute deceptive trade practices in violation of the Uniform Deceptive Trade Practices Act, enacted in Illinois pursuant to 815 Ill. Comp. Stat. 510/1, et. seq.

74.     WPH has engaged in these deceptive trade practices willfully.

75.     CDC is entitled to an injunction enjoining WPH, its successors and assigns from the further commission of these deceptive trade practices and is entitled to recover costs and attorney's fees pursuant to 815 Ill. Comp. Stat. 510/3.

### Prayer For Relief

WHEREFORE, Plaintiff, Consumers Digest Communications, LLC, respectfully requests this Court to:

A.     Temporarily restrain and preliminarily and permanently enjoin WestPoint Home, Inc., and any person associated with WestPoint Home, Inc., from (1) directly or indirectly using the Marks "CONSUMERS DIGEST", "CONSUMERS DIGEST BEST BUY" and the Best Buy Seal Design Mark, or any marks confusingly similar thereto; (2) directly or indirectly using any other service mark or trade name likely to dilute the distinctive quality of CDC's Marks or injure its business reputation; and (3) directly or indirectly using, copying, disseminating and posting any of CDC's protected copyrighted materials;

B.     Direct WestPoint Home, Inc. to deliver up for destruction or other disposition within thirty (30) days of the entry of judgment all advertising, marketing and other materials in its actual or constructive possession that violate the terms of any injunction entered herein or which bear any designation in violation hereof;

C.     Direct WestPoint Home, Inc. to notify all sellers, retailers, distributors, or dealers that they must immediately discontinue (1) directly or indirectly using the Marks "CONSUMERS DIGEST", "CONSUMERS DIGEST BEST BUY" and the Best Buy Seal Design Mark, or any marks confusingly similar thereto; (2) directly or indirectly using any other service mark or trade name likely to dilute the distinctive quality of CDC's Marks or injure its business reputation; and (3) directly or indirectly using, copying, disseminating and posting any of CDC's protected copyrighted materials;

D.     Direct WestPoint Home, Inc. to recall all advertising, marketing and other materials disseminated to sellers, retailers, distributors, or dealers that violate the terms of any injunction entered herein, or bear any designation in violation thereof;

E.     Direct WestPoint Home, Inc. to account for all profits derived from their wrongful activities and to turn them over, trebled, to CDC;

F.     Order WestPoint Home, Inc. to pay CDC all of its damages, trebled, resulting from WestPoint Home, Inc.'s misconduct, including full compensation for the injury to CDC's goodwill and business reputation;

G.     Order WestPoint Home, Inc. to pay CDC punitive damages for WestPoint Home, Inc.'s intentional acts of infringement and unfair competition;

11

H.    Award CDC its attorneys' fees, interest and costs; and

I.    Grant such other relief as this Court deems just.

Respectfully submitted,

CONSUMERS DIGEST COMMUNICATIONS, LLC,

By: _____

One of Its Attorneys

Andrew H. Eres
Ronald A. Damashek
Jeremy P. Kreger
Stahl Cowen Crowley Addis LLC
55 W. Monroe, Suite 1200
Chicago, IL  60603
312-641-0060
ARDC No.: 6237032



UNITED STATES PATENT AND TRADEMARK OFFICE

| Home | Index | Search | System Alerts | eBusiness Center | News & Notices | Contact Us |

## Trademark Electronic Search System(Tess)

*TESS was last updated on Thu Feb 19 04:30:20 EST 2004*

Please logout when you are done to release system resources allocated for you.

List At: [          ] OR [          ] to record: [          ] **Record 10 out of 15**

Check Status *(TARR contains current status, correspondence address and attorney of record for this mark. Use the "Back" button of the Internet Browser to return to TESS)*

**Typed Drawing**

| | |
|---|---|
| **Word Mark** | **CONSUMERS DIGEST** |
| **Goods and Services** | IC 016. US 038. G & S: magazine including articles on a variety of subjects of interest to consumers. FIRST USE: 19610000. FIRST USE IN COMMERCE: 19610000 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 74051892 |
| **Filing Date** | April 23, 1990 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | January 29, 1991 |
| **Registration Number** | 1642060 |
| **Registration Date** | April 23, 1991 |
| **Owner** | (REGISTRANT) Consumers Digest, Inc. CORPORATION ILLINOIS 5705 North Lincoln Avenue Chicago ILLINOIS 60659 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | L. DANIEL LIUTIKAS |



EXHIBIT

A

| | |
|---|---|
| **Prior Registrations** | 1378360 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "DIGEST" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | TRADEMARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). SECTION 8(10-YR) 20020521. |
| **Renewal** | 1ST RENEWAL 20020521 |
| **Live/Dead Indicator** | LIVE |

HOME | INDEX | SEARCH | SYSTEM ALERTS | BUSINESS CENTER | NEWS&NOTICES | CONTACT US | PRIVACY STATEMENT

Thank you for your request. Here are the latest results from the <u>TARR web server.</u>

This page was generated by the TARR system on 2004-02-19 18:02:04 ET

**Serial Number:** 74051892 <u>Assignment Information</u>

**Registration Number:** 1642060 <u>Assignment Information</u>

**Mark (words only):** CONSUMERS DIGEST

**Standard Character claim:** No

**Current Status:** This registration has been renewed.

**Date of Status:** 2002-05-21

**Filing Date:** 1990-04-23

**Transformed into a National Application:** No

**Registration Date:** 1991-04-23

**Register:** Principal

**Law Office Assigned:** TMEO Law Office # 1

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at <u>TrademarkAssistanceCenter@uspto.gov</u>**

**Current Location:** 900 -Warehouse (Newington)

**Date In Location:** 2002-05-23

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. Consumers Digest, Inc.

**Address:**
Consumers Digest, Inc.
5705 North Lincoln Avenue
Chicago, IL 60659
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Illinois

---

## GOODS AND/OR SERVICES

magazine including articles on a variety of subjects of interest to consumers
**International Class:** 016

**First Use Date:** 1961-00-00
**First Use in Commerce Date:** 1961-00-00

**Basis:** 1(a)

---

## ADDITIONAL INFORMATION

---

**Disclaimer:** "DIGEST"

**Prior Registration Number(s):**
1378360

---

## MADRID PROTOCOL INFORMATION

---

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

---

2003-01-29 - TEAS Change of Correspondence Received

2002-05-21 - Registration renewed - 10 year

2002-05-21 - Section 8 (10-year) accepted/ Section 9 granted

2002-05-17 - Response received to Post Registration action - Sections 8 & 9

2002-05-17 - TEAS Section 8 & 9 Received

2002-01-11 - Post Registration action mailed Sections 8 & 9

2001-10-23 - Combined Section 8 (10-year)/Section 9 filed

1996-09-11 - Section 8 (6-year) accepted & Section 15 acknowledged

1996-06-17 - Section 8 (6-year) and Section 15 Filed

1991-04-23 - Registered - Principal Register

1991-01-29 - Published for opposition

1990-12-28 - Notice of publication

1990-11-19 - Approved for Pub - Principal Register (Initial exam)

1990-09-20 - Communication received from applicant

1990-09-13 - Non-final action mailed

1990-09-04 - Case file assigned to examining attorney

## CONTACT INFORMATION

**Correspondent (Owner)**
L. DANIEL LIUTIKAS (Attorney of record)

L. DANIEL LIUTIKAS
MUCH SHELIST FREED DENENBERG AMENT & RUB
SUITE 1800
191 N. WACKER DRIVE
CHICAGO IL 60606-1615
United States
**Phone Number:** 312 521 2000
**Fax Number:** 312 521 2100

 **United States Patent and Trademark Office**

Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help



**Assignments on the Web > Trademark Query**

# Trademark Assignment Abstract of Title

**Total Assignments: 1**

**Serial #:** 74051892    **Filing Dt:** 04/23/1990    **Reg #:** 1642060    **Reg. Dt:** 04/23/1991

**Registrant:** Consumers Digest, Inc.

**Mark:** CONSUMERS DIGEST

**Assignment: 1**

**Reel/Frame:** 2466/0927    **Received:** 03/22/2002    **Recorded:** 02/27/2002    **Pages:** 12

**Conveyance:** ASSIGNS THE ENTIRE INTEREST

**Assignor:** CONSUMERS DIGEST, INC.    **Exec Dt:** 11/19/2001

**Entity Type:** CORPORATION

**Citizenship:** ILLINOIS

**Assignee:** CONSUMERS DIGEST COMMUNICATIONS, LLC    **Entity Type:** ILLINOIS LIMITED LIABILITY COMPANY
8001 NORTH LINCOLN, 6TH FLOOR
SKOKIE, ILLINOIS 60077    **Citizenship:** NONE

**Correspondent:** MUCH SHELIST
L. DANIEL LIUTIKAS
200 NORTH LASALLE STREET, SUITE 2100
CHICAGO, ILLINOIS 60601

Search Results as of: 02/19/2004 06:02 PM

If you have any comments or questions concerning the data displayed, contact OPR / Assignments at 703-308-9723



UNITED STATES PATENT AND TRADEMARK OFFICE

| Home | Index | Search | System Alerts | eBusiness Center | News & Notices | Contact Us |

## Trademark Electronic Search System(Tess)

*TESS was last updated on Thu Feb 19 04:30:20 EST 2004*

| PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | BOTTOM | HELP | |
| CURR LIST | PREV LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Please logout when you are done to release system resources allocated for you.

List At: [＿＿＿＿＿] OR [＿＿] to record: [＿＿＿＿＿] **Record 13 out of 15**

Check Status *(TARR contains current status, correspondence address and attorney of record for this mark. Use the "Back" button of the Internet Browser to return to TESS)*

### Typed Drawing

| | |
|---|---|
| **Word Mark** | **CONSUMERS DIGEST** |
| **Goods and Services** | IC 035. US 101. G & S: COMMERCIAL INFORMATION SERVICES, NAMELY, DISSEMINATION OF INFORMATION CONCERNING PRODUCT PURCHASES. FIRST USE: 19741100. FIRST USE IN COMMERCE: 19741100 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 73495108 |
| **Filing Date** | August 16, 1984 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1A |
| **Published for Opposition** | October 22, 1985 |
| **Registration Number** | 1378360 |
| **Registration Date** | January 14, 1986 |
| **Owner** | (REGISTRANT) CONSUMERS DIGEST, INC. CORPORATION ILLINOIS 5705 NORTH LINCOLN AVENUE CHICAGO ILLINOIS 60659 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of** | TIMOTHY L. TILTON |

| | |
|---|---|
| **Record** | |
| **Prior Registrations** | 1189975 |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CONSUMERS" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Affidavit Text** | SECT 15. SECT 8 (6-YR). |
| **Live/Dead Indicator** | LIVE |



HOME | INDEX | SEARCH | SYSTEM ALERTS | BUSINESS CENTER | NEWS&NOTICES |
CONTACT US | PRIVACY STATEMENT

**Thank you for your request. Here are the latest results from the <u>TARR web server.</u>**

**This page was generated by the TARR system on** 2004-02-19 18:02:28 ET

**Serial Number:** 73495108 <u>Assignment Information</u>

**Registration Number:** 1378360 <u>Assignment Information</u>

**Mark (words only):** CONSUMERS DIGEST

**Standard Character claim:** No

**Current Status:** Section 8 and 15 affidavits have been accepted and acknowledged.

**Date of Status:** 1992-04-01

**Filing Date:** 1984-08-16

**Transformed into a National Application:** No

**Registration Date:** 1986-01-14

**Register:** Principal

**Law Office Assigned:** TMEO Law Office # 6

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at <u>TrademarkAssistanceCenter@uspto.gov</u>**

**Current Location:** 900 -Warehouse (Newington)

**Date In Location:** 1994-01-21

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. CONSUMERS DIGEST, INC.

**Address:**
CONSUMERS DIGEST, INC.
5705 NORTH LINCOLN AVENUE
CHICAGO, IL 60659
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Illinois

---

## GOODS AND/OR SERVICES

COMMERCIAL INFORMATION SERVICES, NAMELY, DISSEMINATION OF INFORMATION
CONCERNING PRODUCT PURCHASES

**International Class:** 035
**First Use Date:** 1974-11-00
**First Use in Commerce Date:** 1974-11-00

**Basis:** 1(a)

---

## ADDITIONAL INFORMATION

**Disclaimer:** "CONSUMERS"

**Prior Registration Number(s):**
1189975

---

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

1992-04-01 - Section 8 (6-year) accepted & Section 15 acknowledged

1991-12-05 - Section 8 (6-year) and Section 15 Filed

1986-01-14 - Registered - Principal Register

1985-10-22 - Published for opposition

1985-09-26 - Notice of publication

1985-08-26 - Approved for Pub - Principal Register (Initial exam)

1985-08-14 - Examiner's amendment mailed

1985-08-07 - Case file assigned to examining attorney

1985-07-03 - Communication received from applicant

1985-01-09 - Non-final action mailed

1984-12-11 - Case file assigned to examining attorney

---

## CONTACT INFORMATION

**Correspondent (Owner)**
TIMOTHY L. TILTON (Attorney of record)

TIMOTHY L. TILTON
TILTON, FALLON, LUNGMUS & CHESTNUT

100 S. WACKER DRIVE
HARTFORD PLAZA
CHICAGO, IL 60606-4002
United States

 **United States Patent and Trademark Office**

Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help



Assignments on the Web > **Trademark Query**

# Trademark Assignment Abstract of Title

**Total Assignments: 1**
**Serial #:** 73495108    **Filing Dt:** 08/16/1984    **Reg #:** 1378360    **Reg. Dt:** 01/14/1986
**Registrant:** CONSUMERS DIGEST, INC.
**Mark:** CONSUMERS DIGEST
**Assignment: 1**
**Reel/Frame:** 2466/0927    **Received:** 03/22/2002    **Recorded:** 02/27/2002    **Pages:** 12
**Conveyance:** ASSIGNS THE ENTIRE INTEREST
**Assignor:** CONSUMERS DIGEST, INC.    **Exec Dt:** 11/19/2001
                                        **Entity Type:** CORPORATION
                                        **Citizenship:** ILLINOIS

**Assignee:** CONSUMERS DIGEST COMMUNICATIONS, LLC    **Entity Type:** ILLINOIS LIMITED
              8001 NORTH LINCOLN, 6TH FLOOR                         LIABILITY
              SKOKIE, ILLINOIS 60077                                COMPANY
                                                      **Citizenship:** NONE

**Correspondent:** MUCH SHELIST
                   L. DANIEL LIUTIKAS
                   200 NORTH LASALLE STREET, SUITE 2100
                   CHICAGO, ILLINOIS 60601

Search Results as of: 02/19/2004 06:02 PM
If you have any comments or questions concerning the data displayed, contact OPR / Assignments at 703-308-9723



## UNITED STATES PATENT AND TRADEMARK OFFICE

| Home | Index | Search | System Alerts | eBusiness Center | News & Notices | Contact Us |
|---|---|---|---|---|---|---|

## Trademark Electronic Search System(Tess)

*TESS was last updated on Thu Feb 19 04:30:20 EST 2004*



Please logout when you are done to release system resources allocated for you.

List At: [          ] OR [          ] to record: [          ] **Record 5 out of 15**

Check Status *(TARR contains current status, correspondence address and attorney of record for this mark. Use the "Back" button of the Internet Browser to return to TESS)*

### Typed Drawing

| | |
|---|---|
| **Word Mark** | CONSUMERS DIGEST BEST BUY |
| **Goods and Services** | IC 042. US 100 101. G & S: PROVIDING CONSUMER PRODUCT INFORMATION ONLINE VIA A GLOBAL COMPUTER NETWORK. FIRST USE: 19981100. FIRST USE IN COMMERCE: 19981100 |
| **Mark Drawing Code** | (1) TYPED DRAWING |
| **Serial Number** | 75436311 |
| **Filing Date** | February 18, 1998 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | March 7, 2000 |
| **Registration Number** | 2443011 |
| **Registration Date** | April 10, 2001 |
| **Owner** | (REGISTRANT) Consumers Digest, Inc. CORPORATION ILLINOIS 8001 North Lincoln Avenue 6th FLOOR SKOKIE ILLINOIS 60077 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of** | MARK V B PARTRIDGE |

**Record**

| | |
|---|---|
| **Prior Registrations** | 1378360;1642060;1728011;1942554;1942575;2039351;AND OTHERS |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CONSUMERS" AND "BEST BUY" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

**Thank you for your request. Here are the latest results from the TARR web server.**

**This page was generated by the TARR system on** 2004-02-19 18:00:48 ET

**Serial Number:** 75436311 Assignment Information

**Registration Number:** 2443011 Assignment Information

**Mark (words only):** CONSUMERS DIGEST BEST BUY

**Standard Character claim:** No

**Current Status:** Registered.

**Date of Status:** 2001-04-10

**Filing Date:** 1998-02-18

**Transformed into a National Application:** No

**Registration Date:** 2001-04-10

**Register:** Principal

**Law Office Assigned:** TMEG Law Office 105

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at TrademarkAssistanceCenter@uspto.gov**

**Current Location:** 900 -Warehouse (Newington)

**Date In Location:** 2001-05-25

---

## LAST APPLICANT(S)/OWNER(S) OF RECORD

1. Consumers Digest, Inc.

**Address:**
Consumers Digest, Inc.
8001 North Lincoln Avenue 6th FLOOR
SKOKIE, IL 60077
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Illinois

---

## GOODS AND/OR SERVICES

PROVIDING CONSUMER PRODUCT INFORMATION ONLINE VIA A GLOBAL COMPUTER NETWORK

**International Class:** 042
**First Use Date:** 1998-11-00
**First Use in Commerce Date:** 1998-11-00

**Basis:** 1(a)

---

## ADDITIONAL INFORMATION

**Disclaimer:** "CONSUMERS" AND "BEST BUY"

**Prior Registration Number(s):**
1378360
1642060
1728011
1942554
1942575
2039351

---

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

2001-04-10 - Registered - Principal Register

2000-09-27 - Allowed for Registration - Principal Register (SOU accepted)

2000-09-27 - Case file assigned to examining attorney

2000-09-18 - Statement of use processing complete

2000-07-18 - Amendment to Use filed

2000-05-30 - Notice of allowance - mailed

2000-03-07 - Published for opposition

2000-02-04 - Notice of publication

1999-12-19 - Approved for Pub - Principal Register (Initial exam)

1999-01-14 - Communication received from applicant

1999-06-23 - Case file assigned to examining attorney

1999-12-19 - Previous action count withdrawn

1999-05-06 - Communication received from applicant

1998-10-07 - Non-final action mailed

1998-09-29 - Case file assigned to examining attorney

## CONTACT INFORMATION

**Correspondent (Owner)**
MARK V B PARTRIDGE (Attorney of record)

MARK V B PARTRIDGE
PATTISHALL MCAULIFFE NEWBURY HILLIARD
& GERALDSON
311 S WACKER DR STE 5000
CHICAGO IL 60606
United States

 **United States Patent and Trademark Office**

Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help



**Assignments on the Web > Trademark Query**

# Trademark Assignment Abstract of Title

**Total Assignments: 1**
   **Serial #:** 75436311   **Filing Dt:** 02/18/1998   **Reg #:** 2443011   **Reg. Dt:** 04/10/2001
**Registrant:** Consumers Digest, Inc.
   **Mark:** CONSUMERS DIGEST BEST BUY
**Assignment: 1**
   **Reel/Frame:** 2466/0927   **Received:** 03/22/2002   **Recorded:** 02/27/2002   **Pages:** 12
   **Conveyance:** ASSIGNS THE ENTIRE INTEREST
      **Assignor:** CONSUMERS DIGEST, INC.                    **Exec Dt:** 11/19/2001
                                                        **Entity Type:** CORPORATION
                                                        **Citizenship:** ILLINOIS

      **Assignee:** CONSUMERS DIGEST COMMUNICATIONS, LLC    **Entity Type:** ILLINOIS LIMITED
                 8001 NORTH LINCOLN, 6TH FLOOR                          LIABILITY
                 SKOKIE, ILLINOIS 60077                                 COMPANY
                                                        **Citizenship:** NONE

**Correspondent:** MUCH SHELIST
              L. DANIEL LIUTIKAS
              200 NORTH LASALLE STREET, SUITE 2100
              CHICAGO, ILLINOIS 60601

If you have any comments or questions concerning the data displayed, contact OPR / Assignments at 703-308-9723



# UNITED STATES PATENT AND TRADEMARK OFFICE

| Home | Index | Search | System Alerts | eBusiness Center | News & Notices | Contact Us |

## Trademark Electronic Search System(Tess)

*TESS was last updated on Thu Feb 19 04:30:20 EST 2004*

| PTO HOME | TRADEMARK | TESS HOME | NEW USER | STRUCTURED | FREE FORM | BROWSE DICT | BOTTOM | HELP | PREV LIST |
| CURR LIST | NEXT LIST | FIRST DOC | PREV DOC | NEXT DOC | LAST DOC |

Please logout when you are done to release system resources allocated for you.

List At: [        ] OR [        ] to record: [        ] **Record 6 out of 15**

---

Check Status *(TARR contains current status, correspondence address and attorney of record for this mark. Use the "Back" button of the Internet Browser to return to TESS)*



| | |
|---|---|
| **Word Mark** | **CONSUMERS DIGEST** BEST BUY |
| **Goods and Services** | IC 042. US 100 101. G & S: PROVIDING CONSUMER PRODUCT INFORMATION ONLINE VIA A GLOBAL COMPUTER NETWORK. FIRST USE: 19981100. FIRST USE IN COMMERCE: 19981100 |
| **Mark Drawing Code** | (3) DESIGN PLUS WORDS, LETTERS, AND/OR NUMBERS |
| **Design Search Code** | 240501 240907 260107 |
| **Serial Number** | 75436302 |
| **Filing Date** | February 18, 1998 |
| **Current Filing Basis** | 1A |
| **Original Filing Basis** | 1B |
| **Published for Opposition** | April 27, 1999 |
| **Registration Number** | 2441264 |
| **Registration** | |

| | |
|---|---|
| **Date** | April 3, 2001 |
| **Owner** | (REGISTRANT) Consumers Digest, Inc. CORPORATION ILLINOIS 8001 North Lincoln Avenue 6th Floor Skokie ILLINOIS 60077 |
| **Assignment Recorded** | ASSIGNMENT RECORDED |
| **Attorney of Record** | JONATHAN S JENNINGS |
| **Prior Registrations** | 1378360;1642060;1728011;1942554;1942575;2039351;AND OTHERS |
| **Disclaimer** | NO CLAIM IS MADE TO THE EXCLUSIVE RIGHT TO USE "CONSUMERS" and "BEST BUY" APART FROM THE MARK AS SHOWN |
| **Type of Mark** | SERVICE MARK |
| **Register** | PRINCIPAL |
| **Live/Dead Indicator** | LIVE |

**Thank you for your request. Here are the latest results from the <u>TARR web server.</u>**

**This page was generated by the TARR system on** 2004-02-19 18:01:35 ET

**Serial Number:** 75436302 <u>Assignment Information</u>

**Registration Number:** 2441264 <u>Assignment Information</u>

**Mark**



**(words only):** CONSUMERS DIGEST BEST BUY

**Standard Character claim:** No

**Current Status:** Registered.

**Date of Status:** 2001-04-03

**Filing Date:** 1998-02-18

**Transformed into a National Application:** No

**Registration Date:** 2001-04-03

**Register:** Principal

**Law Office Assigned:** TMEG Law Office 105

**If you are the applicant or applicant's attorney and have questions about this file, please contact the Trademark Assistance Center at <u>TrademarkAssistanceCenter@uspto.gov</u>**

**Current Location:** 900 -Warehouse (Newington)

**Date In Location:** 2001-04-24

---

### LAST APPLICANT(S)/OWNER(S) OF RECORD

---

1. Consumers Digest, Inc.

**Address:**
Consumers Digest, Inc.
8001 North Lincoln Avenue 6th Floor

Skokie, IL 60077
United States
**Legal Entity Type:** Corporation
**State or Country of Incorporation:** Illinois

---

## GOODS AND/OR SERVICES

PROVIDING CONSUMER PRODUCT INFORMATION ONLINE VIA A GLOBAL COMPUTER
NETWORK
**International Class:** 042
**First Use Date:** 1998-11-00
**First Use in Commerce Date:** 1998-11-00

**Basis:** 1(a)

---

## ADDITIONAL INFORMATION

**Disclaimer:** "CONSUMERS" and "BEST BUY"

**Prior Registration Number(s):**
1378360
1642060
1728011
1942554
1942575
2039351

---

## MADRID PROTOCOL INFORMATION

(NOT AVAILABLE)

---

## PROSECUTION HISTORY

2001-04-03 - Registered - Principal Register

2000-10-17 - Allowed for Registration - Principal Register (SOU accepted)

2000-10-10 - Case file assigned to examining attorney

2000-10-02 - Statement of use processing complete

2000-07-19 - Amendment to Use filed

2000-07-10 - Extension 1 granted

2000-05-16 - Extension 1 filed

1999-11-16 - Notice of allowance - mailed

1999-09-27 - Notice of Allowance canceled

1999-07-20 - Notice of allowance - mailed

1999-04-27 - Published for opposition

1999-03-26 - Notice of publication

1999-02-06 - Approved for Pub - Principal Register (Initial exam)

1999-01-19 - Communication received from applicant

1998-10-07 - Non-final action mailed

1998-09-29 - Case file assigned to examining attorney

---

## CONTACT INFORMATION

**Correspondent (Owner)**
JONATHAN S JENNINGS (Attorney of record)

JONATHAN S JENNINGS
PATTISHALL MCAULIFFE NEWBURY HILLIARD
& GERALDSON
311 S WACKER DR STE 5000
CHICAGO IL 60606
United States

---

**United States Patent and Trademark Office**

Home | Site Index | Search | Guides | Contacts | eBusiness | eBiz alerts | News | Help



## Assignments on the Web > Trademark Query

# Trademark Assignment Abstract of Title

**Total Assignments:** 1
  **Serial #:** 75436302    **Filing Dt:** 02/18/1998    **Reg #:** 2441264    **Reg. Dt:** 04/03/2001
**Registrant:** Consumers Digest, Inc.
  **Mark:** CONSUMERS DIGEST BEST BUY
**Assignment:** 1
  **Reel/Frame:** 2466/0927    **Received:** 03/22/2002    **Recorded:** 02/27/2002    **Pages:** 12
**Conveyance:** ASSIGNS THE ENTIRE INTEREST
  **Assignor:** CONSUMERS DIGEST, INC.
                                                          **Exec Dt:** 11/19/2001
                                                  **Entity Type:** CORPORATION
                                                  **Citizenship:** ILLINOIS

  **Assignee:** CONSUMERS DIGEST COMMUNICATIONS, LLC
               8001 NORTH LINCOLN, 6TH FLOOR          **Entity Type:** ILLINOIS LIMITED
               SKOKIE, ILLINOIS 60077                                 LIABILITY
                                                                      COMPANY
                                                  **Citizenship:** NONE

**Correspondent:** MUCH SHELIST
                  L. DANIEL LIUTIKAS
                  200 NORTH LASALLE STREET, SUITE 2100
                  CHICAGO, ILLINOIS 60601

Search Results as of: 02/19/2004 06:01 PM
If you have any comments or questions concerning the data displayed, contact OPR / Assignments at 703-308-9723

## LICENSE AGREEMENT FOR
## CONSUMERS DIGEST BEST BUY PROGRAM

THIS AGREEMENT is entered on _____March 1, 2005_____, ("Effective Date"), by and between CONSUMERS DIGEST COMMUNICATIONS, LLC, a Delaware limited liability company, having a principal place of business at 8001 North Lincoln Avenue, 6th Floor, Skokie, Illinois 60077-3657 ("LICENSOR"), and _WestPoint Stevens_____, a/an _____corporation having a principal place of business at _1185 Avenue of the Americas, New York, NY 10036__ ("LICENSEE").

### R E C I T A L S

    **A.**     LICENSOR is the owner of the registered trademarks "CONSUMERS DIGEST BEST BUY" word mark (Reg. No. 1,942,554), "CONSUMERS DIGEST BEST BUY" design mark (Reg. No. 1,728,011) and CONSUMERS DIGEST (Reg. Nos. 1,378,360 and 1,642,060) (collectively, the "SEAL") for use as service/certification marks in connection with evaluating and rating consumer products based on criteria set forth by LICENSOR. LICENSOR has evaluated and rated the specific model and brand of product of LICENSEE as set forth in Section 3.0 herein and has certified such model and brand of product in accordance with its criteria.

    **B.**     LICENSEE desires to license use of the SEAL, the text of the editorial review, references to the editorial review and its CONSUMERS DIGEST BEST BUY rating (collectively, the "BEST BUY LICENSED MATERIALS") from LICENSOR in connection with the marketing, advertising, promotion and packaging of the specific model and brand of product certified, which product is set forth in Section 3.0 herein. LICENSOR desires to license such use of the BEST BUY LICENSED MATERIALS to LICENSEE subject to the terms and conditions set forth herein.

### C L A U S E S

**NOW, THEREFORE**, in consideration of the foregoing and the mutual promises set forth herein, the parties agree as follows:

**1.0 Recitals.** The Recitals are incorporated into and made a part of this Agreement.

**2.0 Grant of License and Term.** LICENSOR hereby grants to LICENSEE for a term of one (1) year from the Effective Date ("License Term") a non-exclusive and non-transferable license to use the BEST BUY LICENSED MATERIALS (as defined above) in connection with the marketing, advertising, promotion and packaging of the specific model and brand of product certified, which product is set forth in Section 3.0 below subject to the terms and conditions herein. LICENSOR reserves all other rights not expressly granted herein.

**3.0 Product Identification.** The product covered by the Agreement ("PRODUCT") is identified as follows:

    Brand: ____WestPoint Stevens_____

    Model(s): __Vellux Blanket_____

**4.0 Form of Seal and LICENSOR Approval.**

    **4.1** The SEAL authorized for use is shown below in black and white reproduction in two versions:

**VERSION "A"**
**(Without the ribbon)**



**VERSION "B"**
**(With the ribbon and the licensed model identification typeset on the ribbon)**



1

LICENSEE agrees to only use Version A (**without the ribbon**) in advertising or promotional materials when both the SEAL and the PRODUCT are featured together and the PRODUCT is the only item featured in such advertising or promotional materials. LICENSEE agrees to use Version B (**with the ribbon and the licensed model identification typeset on the ribbon**) for all other displays of the SEAL in advertising or at the point of sale. LICENSEE also agrees that it will only use Version B (**with the ribbon and the licensed model identification typeset on the ribbon**) on all materials to be used by retailers, dealers, wholesalers and distributors (including but not limited to tear sheets, ad slicks, websites, etc.). LICENSEE agrees that it is responsible for all type setting of the model identification on the ribbon.

    4.2   Wherever either SEAL is used, it shall be reproduced in the form shown, including the notice of registration and copyright, and shall be printed legibly in a size at least one inch in SEAL diameter. The SEAL may be reproduced in black and white or green and gold as specified by LICENSOR. Any use of the SEAL not specifically provided for herein shall be adopted by LICENSEE only upon prior approval in writing by LICENSOR.

    **4.3   The copy, layout, script or storyboard for all advertising (print, radio, TV, direct mail, etc.), promotional, packaging and other materials which incorporate the SEAL or any other of the BEST BUY LICENSED MATERIALS shall be sent to LICENSOR for approval prior to production and a finished copy of such materials shall be sent in a timely manner to LICENSOR, attention Licensing Department.**

    4.4   LICENSEE shall comply with all other conditions set forth in writing from time-to-time by LICENSOR with respect to the style, appearance and manner of use of the BEST BUY LICENSED MATERIALS, including without limitation, the SEAL.

    4.5   All advertising and promotional material utilizing the SEAL shall include the following notice: The BEST BUY SEAL is a registered trademark of Consumers Digest Communications, LLC, used under license.

**5.0   Consideration.**   With the signing of this Agreement, LICENSEE shall pay to LICENSOR the sum of: Thirty-Five Thousand Dollars _____ ($ 35,000 .00) ("License Fee").

**6.0 Authorized Uses.**

    6.1   Use By LICENSEE:  LICENSEE may use the BEST BUY LICENSED MATERIALS only in connection with the sale and packaging of the PRODUCT, as specifically defined by model and brand in Section 3.0, as follows:

    (a)  LICENSEE may reproduce the BEST BUY LICENSED MATERIALS on packaging for the PRODUCT, apply the SEAL to the PRODUCT itself, and/or feature the BEST BUY LICENSED MATERIALS in advertising/promotional material using the correct version of the SEAL as set forth in section 4.1. Notwithstanding, neither the SEAL, nor any other BEST BUY LICENSED MATERIALS may be incorporated into the design of the actual PRODUCT in any way as to make it a permanent part of the PRODUCT itself.

    (b)  At a reasonable cost, LICENSOR agrees to make available for purchase by LICENSEE suitable point-of-purchase advertising or promotional materials carrying the BEST BUY LICENSED MATERIALS ("COLLATERAL MATERIALS"). LICENSEE may create its own COLLATERAL MATERIALS subject to licensor approval.  Such COLLATERAL MATERIALS shall make clear to the public that they relate only to the PRODUCT. LICENSEE agrees that all uses of the BEST BUY LICENSED MATERIALS shall be clearly and exclusively associated with the PRODUCT brand and model(s) identification.

    (c)  In radio, television, electronic or print advertising, references may be made to the PRODUCT as "a CONSUMERS DIGEST BEST BUY" and may quote product reviews of the PRODUCT published by LICENSOR.

    (d)  LICENSEE agrees to exercise reasonable care in connection with such PRODUCT advertising to avoid misleading the public about the brand, model, or character of such "BEST BUY" designation.  LICENSEE shall be solely liable for any such representations and shall defend, indemnify and hold LICENSOR harmless from any claims arising from such representation.

    6.2   Use By Retailers, Dealers, Wholesalers, Distributors  ("SELLERS"):  SELLERS may display PRODUCT containers bearing the BEST BUY LICENSED MATERIALS including the SEAL-bearing tags or labels provided directly or indirectly by LICENSEE. SELLERS may use the BEST BUY LICENSED MATERIALS in advertising or merchandising only when the LICENSEE has created and supplied the material specifically for use by the SELLER (including but not limited to tear sheets, ad slicks, websites, etc.). SELLERS may also use the BEST BUY LICENSED MATERIALS when it is part of a package of elements generated and distributed by the LICENSEE for use by SELLERS in local advertising. **LICENSEE shall ensure that all advertising and promotional materials used by SELLERS under this Paragraph comply with the use and approval provisions of this Agreement.** SELLERS shall not submit materials directly to LICENSOR for review and approval. Except as permitted in this Paragraph, Sellers shall have no right to create or use advertising or promotional materials which incorporate the BEST BUY LICENSED MATERIALS or make reference to the rating of the PRODUCT.

2

**6.3 Renewal of License.** So long as the PRODUCT continues to meet the qualifying criteria (i.e., the price and specifications have not substantially changed since the last review of the PRODUCT), the License Term may be renewed for additional consideration and with the prior written consent of LICENSOR. Any renewal will be at the LICENSOR'S sole discretion. In any event, once a new product review for a particular PRODUCT category is published in CONSUMERS DIGEST MAGAZINE, LICENSEES are no longer eligible to renew their license in the particular PRODUCT category.

**6.4 Expiration of License.** Within 7 days after the date the License Term expires, the LICENSEE agrees to send notification in writing to all SELLERS. The notification will: (i) state that the license agreement between LICENSOR and LICENSEE has expired, (ii) direct the SELLERS to discontinue within 7 days of the date of notification all use of the BEST BUY LICENSED MATERIALS, (iii) direct the SELLERS to remove and dispose of within 7 days of the date of notification all promotional and advertising materials containing the SEAL or the BEST BUY LICENSE MATERIALS, and (iv) direct the SELLERS to remove within 7 days of the date of notification all uses of the SEAL or the BEST BUY LICENSED MATERIALS from their websites. LICENSEE must send a copy of this notice to LICENSOR at the address set forth in Paragraph 13 within three days of sending it to SELLERS.

LICENSEE agrees that it will not continue to promote or package the PRODUCT in association with the BEST BUY LICENSED MATERIALS after expiration of the License Term.

**7.0 Cancellation.** LICENSOR shall have the right to cancel this Agreement for the violation of any of the terms by LICENSEE, if such violation is not corrected by LICENSEE within thirty (30) days after LICENSEE has received written notice of such violation from LICENSOR. On cancellation or termination of this Agreement, LICENSEE (its agents, SELLERS, and others authorized by LICENSEE to use the BEST BUY LICENSED MATERIALS) shall have no further right to use the BEST BUY LICENSED MATERIALS in connection with the PRODUCT and will not be entitled to any licensing fee refund in part or whole. LICENSEE shall immediately notify in writing SELLERS and any other parties using the BEST BUY LICENSED MATERIALS on behalf of or for the benefit of LICENSEE of such cancellation or termination. LICENSEE must send a copy of this notice to LICENSOR at the address set forth in Paragragh 13.

**8.0 Acknowledgment Of Rights & Ownership.** LICENSEE acknowledges that all rights of LICENSOR to the BEST BUY LICENSED MATERIALS are valid and the exclusive property of LICENSOR. LICENSEE agrees that it will not perform any act in derogation of such rights or property, nor will it permit others to do so where such derogation by others is reasonably preventable or correctable by LICENSEE. LICENSEE shall not during or after the term of this Agreement contest the validity of LICENSOR'S intellectual property encompassed in the BEST BUY LICENSED MATERIALS including, without limitation, the registered trademarks relating to the SEAL or the copyrights relating to the editorial review or BEST BUY rating.

**9.0 Disclaimer of Pricing & Warranty.** It is understood that LICENSOR has no responsibility for PRODUCT pricing, and the LICENSOR makes no warranty, express or implied, with respect to the PRODUCT.

**10.0 Indemnification.**
   **10.1** LICENSEE, at its own expense, shall defend, indemnify and hold LICENSOR harmless from all reasonable costs and expenses of LICENSOR arising from any suit or claim brought against LICENSOR arising from the manufacture, distribution, advertising, promotion, sale or use of the PRODUCT, except for claims covered by Paragraph 10.2 below, provided however, that (a) LICENSEE shall be promptly advised by LICENSOR in writing of receipt by LICENSOR of any notice of such suit or claim, (b) that LICENSEE shall have the right to exercise sole control of the defense of such suit or claim and all negotiations for its settlement or compromise, and (c) that LICENSOR shall cooperate at LICENSEE's expense with the defense of such suit or claim; and

   **10.2** LICENSOR, at its own expense, shall defend, indemnify and hold LICENSEE harmless from all reasonable costs and expenses of LICENSEE arising from any suit or claim brought against LICENSEE that is based on a claim that the SEAL infringes any applicable trademark, service mark or other property right, provided however that (a) LICENSOR shall be promptly advised by LICENSEE in writing of receipt by LICENSEE of any notice of such suit or claim, (b) that LICENSOR shall have the right to exercise sole control of the defense of such suit or claim and all negotiations for its settlement or compromise, and (c) that LICENSEE shall cooperate at LICENSOR's expense with the defense of such suit or claim.

**11.0 Governing Law, Venue and Attorneys' Fees.** This Agreement shall be governed in accordance with the laws of the State of Illinois, without regard to those principles (statutory or otherwise) pertaining to choice of law. Any lawsuit arising out of this

Agreement must be filed exclusively in either the Circuit Court of Cook County, Illinois or the United States District Court for the Northern District Court of Illinois. If ~~the LICENSEE~~ *a party* breaches this Agreement, ~~the LICENSEE~~ *that party* will be liable for all of the ~~other~~ *other party's* ~~LICENSOR's~~ reasonable attorneys' fees, costs and expenses.

**12.0 Injunctive and Other Relief.** LICENSEE acknowledges that if LICENSEE breaches any of its obligations under this Agreement, such breach will cause damage of an irreparable and continuing nature to LICENSOR, for which money damages alone may not provide adequate relief. Therefore, in addition to all appropriate money damages, LICENSOR is entitled to seek injunctive relief (including but not limited to a temporary restraining order) to prohibit any or all of the LICENSEE'S continuing breach of the terms of this Agreement.

**13.0 Notices.** Notice to a party shall be sent by mail and addressed as follows: (1) LICENSOR:  CONSUMERS DIGEST COMMUNICATIONS, LLC, 8001 North Lincoln Avenue, 6th Floor, Skokie, IL 60077-3657 Attention: Licensing Department; and (2) LICENSEE:  at address stated on Page one.

**14.0 Assignment.** The parties hereto agree that either party may freely assign their rights and obligations hereunder to a third party without consent of the other party. This Agreement will bind and inure to the benefit of each party's successors and assigns.

**15.0 Miscellaneous Acknowledgements.** LICENSEE acknowledges and agrees that LICENSEE has conducted an independent evaluation of the benefits and value of licensing the BEST BUY LICENSED MATERIALS and has not relied on any representations of LICENSOR not contained herein in reaching the decision to enter into this Agreement. LICENSEE further acknowledges and agrees that the License Fee set forth in Section 5.0 is reasonable consideration based on market conditions as of the Effective Date. LICENSOR acknowledges and agrees that the License Fee set forth in Section 5.0 herein, as of the Effective Date, is adequate consideration to grant LICENSEE the License set forth herein for the License Term.

**16.0 Miscellaneous.** No modifications of this Agreement shall be effective unless in writing and signed by both parties hereto. The undersigned warrant that they are officers, employees or agents of LICENSOR and LICENSEE respectively, and are authorized to sign this Agreement on behalf of the party indicated.

LICENSOR:                                              LICENSEE:

Consumers Digest Communications, LLC          X _____

_____            X _Arthur Birkins_____
Signature                                         Signature

Randy Weber                                    X _ARTHUR BIRKINS_____
Type/Print Name                                   Type/Print Name

Publisher                                      X _PRESIDENT BASIC BEDDING_____
Title                                             Title

3-4-05                                         X _MARCH 2, 2005_____
Date                                              Date

4



# LICENSE AGREEMENT FOR
## CONSUMERS DIGEST BEST BUY PROGRAM

THIS AGREEMENT is entered on ___March 1, 2006_____, ("Effective Date"), by and between CONSUMERS DIGEST COMMUNICATIONS, LLC, a Delaware limited liability company, having a principal place of business at 520 Lake Cook Road, Suite 500, Deerfield, Illinois 60015-5633 ("LICENSOR"), and __WestPoint Home, Inc.____,a/an_____corporation having a principal place of business at _1185 Avenue of the Americas, New York, NY 10036__ ("LICENSEE").

## RECITALS

A.      LICENSOR is the owner of the registered trademarks "CONSUMERS DIGEST BEST BUY" word mark (Reg. No. 1,942,554), "CONSUMERS DIGEST BEST BUY" design mark (Reg. No. 1,728,011) and CONSUMERS DIGEST (Reg. Nos. 1,378,360 and 1,642,060) (collectively, the "SEAL") for use as service/certification marks in connection with evaluating and rating consumer products based on criteria set forth by LICENSOR. LICENSOR has evaluated and rated the specific model and brand of product of LICENSEE as set forth in Section 3.0 herein and has certified such model and brand of product in accordance with its criteria.

B.      LICENSEE desires to license use of the SEAL, the text of the editorial review, references to the editorial review and its CONSUMERS DIGEST BEST BUY rating (collectively, the "BEST BUY LICENSED MATERIALS") from LICENSOR in connection with the marketing, advertising, promotion and packaging of the specific model and brand of product certified, which product is set forth in Section 3.0 herein. LICENSOR desires to license such use of the BEST BUY LICENSED MATERIALS to LICENSEE subject to the terms and conditions set forth herein.

## CLAUSES

NOW, THEREFORE, in consideration of the foregoing and the mutual promises set forth herein, the parties agree as follows:

1.0 Recitals. The Recitals are incorporated into and made a part of this Agreement.

2.0 Grant of License and Term. LICENSOR hereby grants to LICENSEE for a term of one (1) year from the Effective Date ("License Term") a non-exclusive and non-transferable license to use the BEST BUY LICENSED MATERIALS (as defined above) in connection with the marketing, advertising, promotion and packaging of the specific model and brand of product certified, which product is set forth in Section 3.0 below subject to the terms and conditions herein. LICENSOR reserves all other rights not expressly granted herein.

3.0 Product Identification. The product covered by the Agreement ("PRODUCT") is identified as follows:

Brand:     _WestPoint Stevens_____

Model(s): _Vellux Blanket_____

4.0 Form of Seal and LICENSOR Approval.

4.1 The SEAL authorized for use is shown below in black and white reproduction in two versions

VERSION "A"
(Without the ribbon)



VERSION "B"
(With the ribbon and the licensed model identification typeset on the ribbon)



1

**EXHIBIT**
C

LICENSEE agrees to only use Version A (**without the ribbon**) in advertising or promotional materials when both the SEAL and the PRODUCT are featured together and the PRODUCT is the only item featured in such advertising or promotional materials. LICENSEE agrees to use Version B (**with the ribbon and the licensed model identification typeset on the ribbon**) for all other displays of the SEAL in advertising or at the point of sale. LICENSEE also agrees that it will only use Version B (**with the ribbon and the licensed model identification typeset on the ribbon**) on all materials to be used by retailers, dealers, wholesalers and distributors (including but not limited to tear sheets, ad slicks, websites, etc.) LICENSEE agrees that it is responsible for all type setting of the model identification on the ribbon.

4.2  Wherever either SEAL is used, it shall be reproduced in the form shown, including the notice of registration and copyright, and shall be printed legibly in a size at least one inch in SEAL diameter. The SEAL may be reproduced in black and white or green and gold as specified by LICENSOR. Any use of the SEAL not specifically provided for herein shall be adopted by LICENSEE only upon prior approval in writing by LICENSOR.

4.3  **The copy, layout, script or storyboard for all advertising (print, radio, TV, direct mail, etc.), promotional, packaging and other materials which incorporate the SEAL or any other of the BEST BUY LICENSED MATERIALS shall be sent to LICENSOR for approval prior to production and a finished copy of such materials shall be sent in a timely manner to LICENSOR, attention Licensing Department.**

4.4  LICENSEE shall comply with all other conditions set forth in writing from time-to-time by LICENSOR with respect to the style, appearance and manner of use of the BEST BUY LICENSED MATERIALS, including without limitation, the SEAL.

4.5  All advertising and promotional material utilizing the SEAL shall include the following notice: The BEST BUY SEAL is a registered trademark of Consumers Digest Communications, LLC, used under license.

5.0  **Consideration.**  With the signing of this Agreement, LICENSEE shall pay to LICENSOR the sum of: __Thirty-Five Thousand Dollars__ _____ (**$ 35,000** .00) ("License Fee").

### 6.0 Authorized Uses.

6.1  Use By LICENSEE:  LICENSEE may use the BEST BUY LICENSED MATERIALS only in connection with the sale and packaging of the PRODUCT, as specifically defined by model and Section 3.0, as follows:

(a)  LICENSEE may reproduce the BEST BUY LICENSED MATERIALS on packaging for the PRODUCT, apply the SEAL to the PRODUCT itself, and/or feature the BEST BUY LICENSED MATERIALS in advertising/promotional material using the correct version of the SEAL as set forth in section 4.1. Notwithstanding, neither the SEAL, nor any other BEST BUY LICENSED MATERIALS may be incorporated into the design of the actual PRODUCT in any way as to make it a permanent part of the PRODUCT itself.

(b)  At a reasonable cost, LICENSOR agrees to make available for purchase by LICENSEE suitable point-of-purchase advertising or promotional materials carrying the BEST BUY LICENSED MATERIALS ("COLLATERAL MATERIALS"). LICENSEE may create its own COLLATERAL MATERIALS subject to licensor approval.  Such COLLATERAL MATERIALS shall make clear to the public that they relate only to the PRODUCT. LICENSEE agrees that all uses of the BEST BUY LICENSED MATERIALS shall be clearly and exclusively associated with the PRODUCT brand and model(s) identification.

(c)  In radio, television, electronic or print advertising, references may be made to the PRODUCT as "a CONSUMERS DIGEST BEST BUY" and may quote product reviews of the PRODUCT published by LICENSOR.

(d)  LICENSEE agrees to exercise reasonable care in connection with such PRODUCT advertising to avoid misleading the public about the brand, model, or character of such "BEST BUY" designation.  LICENSEE shall be solely liable for any such representations and shall defend, indemnify and hold LICENSOR harmless from any claims arising from such representation.

6.2  Use By Retailers, Dealers, Wholesalers, Distributors ("SELLERS"):  SELLERS may display PRODUCT containers bearing the BEST BUY LICENSED MATERIALS including the SEAL-bearing tags or labels provided directly or indirectly by LICENSEE.  SELLERS may use the BEST BUY LICENSED MATERIALS in advertising or merchandising only when the LICENSEE has created and supplied the material specifically for use by the SELLER (including but not limited to tear sheets, ad slicks, websites, etc.). SELLERS may also use the BEST BUY LICENSED MATERIALS when it is part of a package of elements generated and distributed by the LICENSEE for use by SELLERS in local advertising. **LICENSEE shall ensure that all advertising and promotional materials used by SELLERS under this Paragraph comply with the use and approval provisions of this Agreement.** SELLERS shall not submit materials directly to LICENSOR for review and approval. Except as permitted in this Paragraph, Sellers shall have no right to create or use advertising or promotional materials which incorporate

2

the BEST BUY LICENSED MATERIALS or make reference to the rating of the PRODUCT.

    **6.3 Renewal of License.**  So long as the PRODUCT continues to meet the qualifying criteria (i.e., the price and specifications have not substantively changed since the last review of the PRODUCT), the License Term may be renewed for additional consideration and with the prior written consent of LICENSOR.  Any renewal will be at the LICENSOR'S sole discretion. In any event, once a new product review for a particular PRODUCT category is published in CONSUMERS DIGEST MAGAZINE, LICENSEES are no longer eligible to renew their license in the particular PRODUCT category.

    **6.4 Expiration of License.**  Within 7 days after the date the License Term expires, the LICENSEE agrees to send notification in writing to all SELLERS.  The notification will: (i) state that the license agreement between LICENSOR and LICENSEE has expired, (ii) direct the SELLERS to discontinue within 7 days of the date of notification all use of the BEST BUY LICENSED MATERIALS, (iii) direct the SELLERS to remove and dispose of within 7 days of the date of notification all promotional and advertising materials containing the SEAL or the BEST BUY LICENSED MATERIALS, and (iv) direct the SELLERS to remove within 7 days of the date of notification all uses of the SEAL or the BEST BUY LICENSED MATERIALS from their websites.  LICENSEE must send a copy of this notice to LICENSOR at the address set forth in Paragraph 13 within three days of sending it to SELLERS.

    LICENSEE agrees that it will not continue to promote or package the PRODUCT in association with the BEST BUY LICENSED MATERIALS after expiration of the License Term.

**7.0 Cancellation.**  LICENSOR shall have the right to cancel this Agreement for the violation of any of the terms by LICENSEE, if such violation is not corrected by LICENSEE within thirty (30) days after LICENSEE has received written notice of such violation from LICENSOR.  On cancellation or termination of this Agreement, LICENSEE (its agents, SELLERS, and others authorized by LICENSEE to use the BEST BUY LICENSED MATERIALS) shall have no further right to use the BEST BUY LICENSED MATERIALS in connection with the PRODUCT and will not be entitled to any licensing fee refund in part or whole.  LICENSEE shall immediately notify in writing SELLERS and any other parties using the BEST BUY LICENSED MATERIALS on behalf of or for the benefit of LICENSEE of such cancellation or termination.  LICENSEE must send a copy of this notice to LICENSOR at the address set forth in Paragraph 13.

**8.0 Acknowledgment Of Rights & Ownership.**  LICENSEE acknowledges that all rights of LICENSOR to the BEST BUY LICENSED MATERIALS are valid and the exclusive property of LICENSOR.  LICENSEE agrees that it will not perform any act in derogation of such rights or property, nor will it permit others to do so where such derogation by others is reasonably preventable or correctable by LICENSEE.  LICENSEE shall not during or after the term of this Agreement contest the validity of LICENSOR'S intellectual property encompassed in the BEST BUY LICENSED MATERIALS including, without limitation, the registered trademarks relating to the SEAL or the copyrights relating to the editorial review or BEST BUY rating.

**9.0 Disclaimer of Pricing & Warranty.**  It is understood that LICENSOR has no responsibility for PRODUCT pricing, and the LICENSOR makes no warranty, express or implied, with respect to the PRODUCT.

**10.0 Indemnification.**
    **10.1**  LICENSEE, at its own expense, shall defend, indemnify and hold LICENSOR harmless from all reasonable costs and expenses of LICENSOR arising from any suit or claim brought against LICENSOR arising from the manufacture, distribution, advertising, promotion, sale or use of the PRODUCT, except for claims covered by Paragraph 10.2 below, provided however, that (a) LICENSEE shall be promptly advised by LICENSOR in writing of receipt by LICENSOR of any notice of such suit or claim, (b) that LICENSEE shall have the right to exercise sole control of the defense of such suit or claim and all negotiations for its settlement or compromise, and (c) that LICENSOR shall cooperate at LICENSEE's expense with the defense of such suit or claim; and

    **10.2**  LICENSOR, at its own expense, shall defend, indemnify and hold LICENSEE harmless from all reasonable costs and expenses of LICENSEE arising from any suit or claim brought against LICENSEE that is based on a claim that the SEAL infringes any applicable trademark, service mark or other property right, provided however that (a) LICENSOR shall be promptly advised by LICENSEE in writing of receipt by LICENSEE of any notice of such suit or claim, (b) that LICENSOR shall have the right to exercise sole control of the defense of such suit or claim and all negotiations for its settlement or compromise, and (c) that LICENSEE shall cooperate at LICENSOR's expense with the defense of such suit or claim.

**11.0 Governing Law, Venue and Attorneys' Fees.** This Agreement shall be governed in accordance with the laws of the State

3

of Illinois, without regard to those principles (statutory or otherwise) pertaining to choice of law. Any lawsuit arising out of this Agreement must be filed exclusively in either the Circuit Court of Cook County, Illinois or the United States District Court for the Northern District Court of Illinois. If the LICENSOR breaches this Agreement, the LICENSEE will be liable for all of the other party's reasonable attorneys' fees, costs and expenses.

**12.0 Injunctive and Other Relief.** LICENSEE acknowledges that if LICENSEE breaches any of its obligations under this Agreement, such breach will cause damage of an irreparable and continuing nature to LICENSOR, for which money damages alone may not provide adequate relief. Therefore, in addition to all appropriate money damages, LICENSOR is entitled to seek injunctive relief (including but not limited to a temporary restraining order) to prohibit any or all of the LICENSEE'S continuing breach of the terms of this Agreement.

**13.0 Notices.** Notice to a party shall be sent by mail and addressed as follows:  (1) LICENSOR:  CONSUMERS DIGEST COMMUNICATIONS, LLC, 520 Lake Cook Road, Suite 500, Deerfield, Illinois 60015-5633 Attention: Licensing Department; and (2) LICENSEE:  at address stated on Page one.

**14.0 Assignment.** The parties hereto agree that either party may freely assign their rights and obligations hereunder to a third party without consent of the other party. This Agreement will bind and inure to the benefit of each party's successors and assigns.

**15.0 Miscellaneous Acknowledgements.** LICENSEE acknowledges and agrees that LICENSEE has conducted an independent evaluation of the benefits and value of licensing the BEST BUY LICENSED MATERIALS and has not relied on any representations of LICENSOR not contained herein in reaching the decision to enter into this Agreement. LICENSEE further acknowledges and agrees that the License Fee set forth in Section 5.0 is reasonable consideration based on market conditions as of the Effective Date.  LICENSOR acknowledges and agrees that the License Fee set forth in Section 5.0 herein, as of the Effective Date, is adequate consideration to grant LICENSEE the License set forth herein for the License Term.

**16.0 Miscellaneous.** No modifications of this Agreement shall be effective unless in writing and signed by both parties hereto. The undersigned warrant that they are officers, employees or agents of LICENSOR and LICENSEE respectively, and are authorized to sign this Agreement on behalf of the party indicated.

LICENSOR:                                           LICENSEE:

Consumers Digest Communications, LLC                WestPoint Home, Inc.

_____                           _____
Signature                                           Signature

Randy Weber                                         JOSEPH PENNACCHIO
Type/Print Name                                     Type/Print Name

Publisher                                           CEO
Title                                               Title

5/31/06                                             5/17/06
Date                                                Date

## BEST BUY LICENSE AGREEMENT - ADDENDUM

Effective March 1, 2006, the license agreement between Consumers Digest Communications, LLC (Licensor) and WestPoint Home, Inc. (Licensee) is hereby amended to include additional language to Paragraph 6.4 Expiration of License. This contract addendum in no way changes the substance or intent of the original agreement with respect to any other terms, conditions and covenants between licensor and licensee.

### Paragraph 6.4.1 Disposition of Packaging

LICENSEE may continue to use packaging containing the SEAL or the BEST BUY LICENSED MATERIALS produced three (3) months or more prior to the expiration of this agreement for up to three (3) months after expiration of this agreement. LICENSEE will use its' best efforts to produce package inventory based on anticipated sales in compliance with these guidelines. This exception applies to PRODUCT packaging only as a retail purchase is required to reduce inventory. The discovery by LICENSOR of isolated and miscellaneous quantities of such PRODUCT packaging beyond three (3) months following the expiration of the then existing license term will not be considered a violation of any licensing provision.

CONSUMERS DIGEST COMMUNICATIONS, LLC

By: _____

Title: _____

Date: 5/31/06 _____

LICENSEE:

WESTPOINT HOME, INC.

By: x _____

Title: x     CEO _____

Date: x     5/17/06 _____

Bed Shop  Bath Shop  Brands  Where To Buy  What's Hot  Articles & Tips  Talk To Us

about us
home

SEARC



- Home
- ›
- Articles+Tips
- ›
- In the News
- ›
- Consumers Digest

- May we suggest:
  - Little MissMatched
  - Marvelous Dots
  - Morelli Bedding Collection

- Bed Shop
- Bath Shop
- Brands
- Where to Buy
- About Us
- What's Hot
- Articles+Tips
  - Ask Lily
  - Articles
  - Tips
  - In the News
    - Consumers Digest
    - Parenting Magazine
    - Family Circle Magazine
    - Upscale Magazine
    - House & Garden
    - LDB Interior Textiles
    - Modern

# In the News

### Consumers Digest - Feb. '08

A repeat Best Buy recipient "for good reason." Consumers Digest recognized the Vel distinctive velvety plushness, lightweight warmth, fabulous array of available hues t décor, and other great features.

**Featuring:** Vellux Blanket



Bride

- Talk To Us



enter email here    **Sign Up**

**Browse by Color**

What bedding trend for spring do you like best?

- ○ Romantic floral
- ○ Global chic
- ○ Bright bold solids

**Vote**

~View Past Polls~



By Jessica Goldbogen Harlan

Some people will try anything to get a good night's sleep—drinking a cup of warm milk before bedtime, turning on a white-noise machine or sniffing a lavender sachet for its supposedly relaxing aromatherapy properties. However, bedding manufacturers think their latest products will be enough to let you sleep easy.

In the bedding world, innovation in pillows and comforters, mattress pads and sheets, is all about improved construction that better shaped the product, and today's high-tech products focus on new materials and fibers inside. Manufacturers say their latest innovations will address issues from texture, to durability...

...allergies, so getting too hot when you sleep.

"The innovation now is things that consumers will either solve a problems or feel good," says Alan Kennedy, spokesman for bedding manufacturer WestPoint Home. Digital found that many of these products should provide a better night's sleep to those suffering from allergies, overheating and other issues. The better news is that these hi-tech products aren't much more expensive than traditional counterparts.

Some companies are using a new fiber in pillows, mattress pads and comforters called [?]. This fiber keeps you cool and wicks away humidity, keeps sweaty sleepers comfortable. Compared...

- Home
- |
- Bed Shop
- |
- Bath Shop
- |
- Brands
- |
- Where To Buy
- |
- Articles & Tips
- |

- Healthcare & Hospitality
- |
- Contact Us
- |
- Privacy
- |
- Unsubscribe
- |
- About Us
- |
- Our Vendors
- SEARCH
-

Bed Shop  Bath Shop  Brands  Where To Buy  What's Hot  Articles & Tips  Talk To Us
about us
home

SEARCH

# W E S T P O I N T™
## H O M E

- Home
- ›
- Brands
- ›
- Vellux
- ›
- Bed
- ›
- Vellux Blanket

- May we suggest:
  - Little MissMatched Marvelous Dots
  - Morelli Bedding Collection



- Bed Shop
- Bath Shop
- Brands
- Where to Buy
- About Us
- What's Hot
- Articles+Tips
- Talk To Us



**vellux**

Vellux
Vellux Blanket

Send this to a Friend    Print this p

America's favorite blanket for ov
and recently voted a "Consumer
Best Buy"!

- Hypo-allergenic and high
  the Vellux nylon blanket
  warmth without weight.
- High-tech and high-touch
  fading, pilling, stretching
- Withstands frequent wash
  the #1 choice for househo
  children.
- The perfect year-round bl
- Becomes softer wash afte
- Offered in an array of styl

  
Enlarge
Image

COLORS AVAILABLE



🛒 AVAILABLE AT THESE
RETAILERS



amazon.com    KOHI
expect great thing

OTHER PRODUCTS YOU MIGHT

enter email here  Sign Up

**Browse by Color**

Your Opinion Counts


EXHIBIT


http://martex.com/page/view/id/245

What bedding trend for spring do you like best?

LIKE

○ Romantic floral
○ Global chic
○ Bright bold solids

[ Vote ]

~View Past Polls~



Charisma Gosford Sheets



Exclusive Brands Home Classics Supersoft Plush Blanket



Charisma Egyptian Cotton Blanket





- Home
- |
- Bed Shop
- |
- Bath Shop
- |
- Brands
- |
- Where To Buy
- |
- Articles & Tips
- |
- Healthcare & Hospitality
- |
- Contact Us
- |
- Privacy
- |
- Unsubscribe
- |
- About Us
- |
- Our Vendors
- SEARCH
-